FIRST-CITIZENS BANK & TRUST COMPANY, Plaintiff v. FOUR OAKS BANK & TRUST COMPANY, Defendant

No. COA02-506

(Filed 4 March 2003)

## 1. Bankruptcy— collateral attack—sale of collateral—lack of notice

Plaintiff was entitled to collaterally attack a bankruptcy consent order through a state lawsuit claiming that defendant had sold collateral in which plaintiff had a superior security interest and appropriated the funds to its own use. Federal judgments must be accorded full faith and credit but may be collaterally attacked through allegations of extrinsic fraud. Depriving the unsuccessful party of an opportunity to present its case is extrinsic fraud; here, plaintiff asserted that it had no knowledge of defendant's agreement for the sale of the collateral and no opportunity to be heard prior to the entry of the bankruptcy consent order authorizing the sale.

## 2. Uniform Commercial Code— secured property—priorities

The trial court erred by granting summary judgment for defendant in an action to recover the outstanding debt secured by a drill rig engine which plaintiff contended had been sold in bankruptcy without plaintiff's knowledge. Defendant made no arguments regarding the priority of plaintiff's interest and there was no genuine issue of material fact as to plaintiff's interest in the engine.

Appeal by plaintiff from order entered 14 February 2002 by Judge Jacquelyn L. Lee in Johnston County District Court. Heard in the Court of Appeals 29 January 2003.

*Ward and Smith, P.A., by J. Michael Fields, Lance P. Martin and Katherine E. Lewis, for plaintiff-appellant.*

*Gordon C. Woodruff for defendant-appellee.*

MARTIN, Judge.

Plaintiff, First-Citizens Bank & Trust Company, brought this action alleging that defendant, Four Oaks Bank & Trust Company, sold collateral, a drill rig engine, in which plaintiff had a superior

security interest and appropriated the proceeds to its own use. Plaintiff further alleged that defendant had knowledge of plaintiff's interest in the engine at the time of the sale, and that defendant sold it without notice to, or knowledge of, plaintiff. Plaintiff sought to recover the amount of the outstanding debt secured by the engine, together with costs and attorneys fees. Defendant answered, denying it was obligated to pay plaintiff any amount. Plaintiff subsequently moved for summary judgment.

The materials submitted to the district court in support of, and in opposition to, the motion for summary judgment establish that on 17 October 1996, Jimmie and Valerie Beaty borrowed $92,000 from defendant for which they gave defendant a security interest in a drill machine, consisting of a ten-wheeled truck with its own engine, as well as a drill rig with its own engine on the back of the truck frame. In February 1997, plaintiff loaned the Beatys $13,466 for the purchase of a replacement engine for the drill rig. The loan was secured by a security agreement giving plaintiff a security interest in the drill engine, which plaintiff duly perfected. Mr. Beaty thereafter installed the drill engine on the drill rig on the back of the truck.

On 9 August 1999, the Beatys filed for Chapter 13 bankruptcy in the United States Bankruptcy Court for the Eastern District of North Carolina. Both plaintiff and defendant were listed on the bankruptcy court's schedule of creditors as having an interest in the drill rig. Thereafter, on 1 November 1999, defendant filed a motion in bankruptcy court seeking relief from the automatic stay, or in the alternative, other adequate protection of its interest in the drill machine. Although the record indicates a hearing on the motion was scheduled in bankruptcy court on 1 December 1999, the record is silent as to whether the hearing was held, and the outcome thereof, if any. Apparently, plaintiff received no notice of the hearing. However, on 14 January 2000, upon the Beaty's motion, the bankruptcy court entered an order, consented to by the Beatys and the Chapter 13 trustee, authorizing the Beatys to sell the entire drill machine to Ingle Brothers Drilling for $50,000 and directing that all proceeds of the sale be given to defendant.

The district court entered an order concluding there was no genuine issue of material fact and that defendant was entitled to judgment as a matter of law. Plaintiff's motion for summary judgment was denied and summary judgment was entered in favor of defendant. Plaintiff appeals.

Plaintiff assigns error to the entry of summary judgment in defendant's favor, arguing that (1) plaintiff had a properly-perfected purchase money security interest in the drill rig engine which took priority over any interest of defendant's in the engine; (2) plaintiff had a properly-perfected security interest in the drill rig engine which took priority over defendant's security interest in the drill machine; (3) the new drill rig engine did not accede to the drill machine and was thus not subject to defendant's security interest in the drill machine; and (4) public policy dictates plaintiff should prevail because it did everything according to law to perfect its interest in the drill rig engine, and defendant should not be permitted to circumvent plaintiff's rights.

[1] In essence, plaintiff seeks to collaterally attack the order of the bankruptcy court, for if this Court were to agree with plaintiff's arguments and render a ruling to that effect, the bankruptcy court's order authorizing defendant to retain all proceeds from the sale of the drill machine would be negated. In general, the courts of this State must accord a federal judgment the same full faith and credit accorded judgments rendered in other states. *See Hampton v. North Carolina Pulp Co.*, 223 N.C. 535, 27 S.E.2d 538 (1943); *Van Kempen v. Latham*, 195 N.C. 389, 142 S.E. 322 (1928). As with all foreign judgments, a party may collaterally attack a judgment by establishing one of three grounds: (1) the court which entered the judgment was without jurisdiction; (2) the judgment was procured through fraud; or (3) the judgment is against public policy. *Lang v. Lang*, 108 N.C. App. 440, 450, 424 S.E.2d 190, 195, *disc. review denied*, 333 N.C. 575, 429 S.E.2d 570 (1993).

" 'It is a well-settled general rule that whenever the rights of third persons are affected they may collaterally attack a judgment for fraud committed by one party, or for collusion of both parties.' " *Strickland v. Hughes*, 273 N.C. 481, 488, 160 S.E.2d 313, 318 (1968). " 'However, to make a successful attack upon a foreign judgment on the basis of fraud, it is necessary that extrinsic fraud be alleged.' " *Lang*, 108 N.C. App. at 450, 424 S.E.2d at 195 (citation omitted). Extrinsic fraud is that " 'which is collateral to the foreign proceeding, and not that which arises within the proceeding itself and concerns some matter necessarily under the consideration of the foreign court upon the merits.' " *Id.* (citation omitted). Our Supreme Court has noted that fraud is extrinsic " 'when it deprives the unsuccessful party of an opportunity to present his case to the court. If an unsuccessful party to an action has been prevented from fully participating therein there

has been no true adversary proceeding, and the judgment is open to attack at any time.' " *Smith v. Smith*, 334 N.C. 81, 86, 431 S.E.2d 196, 199 (1993) (citation omitted).

In the present case, plaintiff asserted it had no knowledge of the Beaty's agreement with defendant for the sale of the drill machine with all proceeds going to defendant, and that it had no notice or opportunity to be heard on the matter prior to entry of the bankruptcy consent order authorizing the sale. Defendant made no showing, in the record before the district court, to refute plaintiff's assertion that it had no notice of the consent order prior to its entry. The consent order states it was entered upon the Beatys' motion to sell the drill machine, with all proceeds of the sale to go to defendant, and makes no mention of plaintiff having been informed of the sale. Indeed, the fact the consent order was entered at all is evidence of plaintiff's lack of notice and opportunity to be heard, for had plaintiff had such notice, common sense dictates plaintiff would not have consented to its entry, which resulted in plaintiff foregoing its substantial interest in the drill rig engine. Moreover, the record contains the affidavit of Michael Creech, plaintiff's Vice-President who handled the matter of the drill rig engine on behalf of plaintiff, who testified the bankruptcy court did not give him notice of the proposed sale or consent order prior to its entry.

We hold the record sufficiently establishes that plaintiff did not have proper notice of the pending sale of the drill machine, nor an opportunity to be heard on the matter prior to entry of the bankruptcy consent order. *See First Union Nat'l Bank v. Naylor*, 102 N.C. App. 719, 404 S.E.2d 161 (1991) (where wife not listed as creditor and record contains no evidence she had notice or actual knowledge of husband's bankruptcy petition, wife was unable to protect her interests in bankruptcy court, and thus her breach of contract action outside bankruptcy court survived husband's bankruptcy discharge). The absence of such notice and opportunity to be heard prior to entry of an order affecting one's rights or interests constitutes extrinsic fraud for which the affected party may attack a foreign order. Thus, we believe plaintiff is entitled to collaterally attack the bankruptcy consent order, and we proceed to an analysis of the merits of plaintiff's claims.

[2] That analysis leads us to agree with plaintiff that it maintains an interest superior to that of defendant in the drill rig engine, and that it is entitled to recoup from defendant the remaining amount owing on its agreement with the Beaty's. First, we agree with plaintiff that it

maintains a purchase money security interest in the drill rig engine. Under Article IX of the Uniform Commercial Code as it was in effect prior to 1 July 2002 and at all times relevant to this appeal, an interest is a purchase money security interest to the extent it is "taken by a person who by making advances or incurring an obligation gives value to enable the debtor to acquire rights in or the use of collateral if such value is in fact so used." N.C. Gen. Stat. § 25-9-107 (2000). Moreover, a purchase money security interest in collateral other than inventory "has priority over a conflicting security interest in the same collateral *or its proceeds* if the purchase money security interest is perfected at the time the debtor receives possession of the collateral or within 20 days thereafter." N.C. Gen. Stat. § 25-9-312(4) (2000) (emphasis added).

The record in this case establishes the Beatys borrowed money from plaintiff for the purchase of a new drill rig engine for their drill machine; that plaintiff's check was made out to Covington Diesel, the seller of the engine; that in exchange, the Beatys executed a security agreement in favor of plaintiff on 7 February 1997; and that its interest in the drill rig engine was perfected on 12 February 1997, within 20 days of the Beaty's receipt of the engine. Moreover, defendant admitted in its answer that plaintiff maintained a "first priority perfected security interest" in the drill rig engine as reflected by financing statements filed with the Johnston County Register of Deeds and the Secretary of State.

Additionally, the record shows plaintiff's security interest in the drill rig engine had priority over defendant's security interest in the drill machine, for under G.S. § 25-9-314, "[a] security interest in goods which attaches before they are installed in or affixed to other goods takes priority as to the goods installed or affixed . . . over the claims of all persons to the whole." N.C. Gen. Stat. § 25-9-314(1) (2000). Although that statute provides some exceptions to the general rule, none of the exceptions applies here. Further, the record shows that the drill rig engine did not accede to the drill machine, nor was it otherwise commingled and processed with the drill machine as a whole such that plaintiff would lose the priority of its interest.

In *Goodrich Silvertown Stores v. Caesar*, 214 N.C. 85, 197 S.E. 698 (1938), our Supreme Court held that the seller of automobile tires and tubes who possessed a chattel mortgage on the parts at the time of sale was entitled to recover those parts or the value of them even though the parts had been placed on a truck later repossessed by the seller of the truck under a conditional sales contract containing an

after-acquired property clause. In so holding, the court addressed the doctrine of accession, stating "[t]he doctrine of accession is inapplicable in cases where personal property is placed upon other personal property if the property so placed had not become an integral part of the property to which it was attached and could be conveniently detached." *Id.* at 87, 197 S.E. at 700. Noting that tires are easily identified and removed without damage to the whole, the court concluded the doctrine of accession was inapplicable. *Id.*

Moreover, the court dismissed the argument that the conditional sales agreement between the seller and buyer of the truck which purported to extend the seller's interest over any replacements or accessories later placed upon the truck defeated the interest of the seller of the tubes and tires. In support, the court cited this general principle:

> "A mortgage given to cover after-acquired property covers such property only in the condition in which it comes into the hands of the mortgagor. If that property is already subject to mortgages or other liens at that time, the general mortgage does not displace them although they may be junior to it in point of time. It attaches only to such interest as the mortgagor acquires."

*Id.* at 88, 197 S.E. at 700 (citation omitted).

In the present case, Jimmie Beaty testified that he purchased the drill rig engine separately from the drill machine, that he removed the old engine himself, and replaced it with the new engine subject to plaintiff's interest, and that this process in no way caused any damage to the drill machine or its existing parts. Mr. Beaty further stated he could have removed the new engine from the drill machine without harm to the machine as a whole. The record demonstrates, without contradiction, that the drill rig engine was a detachable component of the drill machine and therefore had not become a commingled, integral part of the machine. Furthermore, any after-acquired property clause in the Beaty's agreement with defendant does not defeat plaintiff's superior interest in the drill rig engine, for defendant only acquired an interest in the engine to the extent of the Beaty's interest, which interest was always subject to plaintiff's.

Defendant has made no arguments on appeal regarding the priority of plaintiff's interest in the drill rig engine over its own interest. The record demonstrates no genuine issue of material fact as to plaintiff's interest in the drill rig engine, and accordingly, it was entitled to

judgment as a matter of law. For the reasons stated herein, the trial court's entry of summary judgment for defendant is reversed and this case is remanded to the trial court for entry of summary judgment in favor of plaintiff.

Reversed and remanded.

Judges HUDSON and STEELMAN concur.